# EXHIBIT A

EFiled: Sep 6 2011 12:39PM EDT
Transaction ID 39656765
Case No. 5514-VCG

EFiled: Aug 15 2011 1:56:40
Transaction ID 39318879
Case No. 5514-VCG



IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE PSYCHIATRIC SOLUTIONS, INC. SHAREHOLDER LITIGATION | Consol. C.A. No. 5514-CC |

### ORDER AND FINAL JUDGMENT

The Stipulation and Agreement of Settlement[1] of the above-captioned class action (the "Delaware Action"), which is incorporated herein by reference, and the settlement contemplated thereby (the "Settlement") having been presented at the Settlement Hearing on _Sept. 6_, 2011, pursuant to the Scheduling Order entered herein on _June 13_, 2011 (the "Scheduling Order"), and the Court having determined that notice of said hearing was given to the Settlement Class (as defined below) in accordance with the Scheduling Order and that said notice was adequate and sufficient; and the Parties having appeared by their attorneys of record; and the attorneys for the respective Parties having been heard in support of Settlement of the Actions; and an opportunity to be heard having been given to all other persons desiring to be heard as provided in the notice; and the entire matter of the Settlement having been considered by the Court;

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED this _6th_ day of _September_, 2011, as follows:

1. The Notice of Pendency of Proposed Settlement of Class Actions and Settlement Hearing ("Notice") has been given to the Settlement Class (as defined below) pursuant to and in the manner directed by the Scheduling Order, proof of the mailing of the Notice has been filed

---

[1] Except as otherwise expressly provided herein or as the context otherwise requires, all capitalized terms shall have the same meanings and/or definitions as set forth in the Stipulation and Agreement of Settlement dated May 9, 2011 (the "Stipulation"), and filed with the Court on May 9, 2011.

with the Court and a full opportunity to be heard has been offered to all parties to the Actions, the Settlement Class and persons in interest. The form and manner of the Notice is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Delaware Court of Chancery Rule 23 and due process, and it is further determined that all members of the Settlement Class are bound by the Order and Final Judgment herein.

2. The Court hereby finds that the Delaware Action is a proper class action pursuant to Delaware Court of Chancery Rule 23(a), 23(b)(1) and (b)(2) and hereby finally certifies a settlement class consisting of:

> All record and beneficial holders of PSI stock at any time between February 11, 2010 and November 15, 2010, excluding all Defendants; all current and former directors, officers, parents, subsidiaries and affiliates of PSI and UHS; members of the immediate families (parents, spouses, siblings, and children) of each of the Individual Defendants and all current and former directors and officers of PSI and UHS; any person, firm, trust, corporation or entity in which any Defendant has or had a controlling interest or which is related to or affiliated with any of the Defendants; and the legal representatives, heirs, successors in interest or assigns of any such excluded party (the "Settlement Class").

3. Based on the record in the Action, the Settlement Class satisfies the provisions of Delaware Court of Chancery Rules 23(a), 23(b)(1) and 23(b)(2). Specifically, this Court finds that: (i) the Settlement Class is so numerous that joinder of all members is impractical; (ii) there are questions of law and fact common to the Settlement Class; (iii) the claims of the plaintiffs in the Delaware Action (the "Delaware Plaintiffs") are typical of the claims of the Settlement Class; (iv) Delaware Plaintiffs and Delaware Plaintiffs' counsel have fairly and adequately protected the interests of the Settlement Class; (v) the prosecution of separate actions by individual members of the Settlement Class would create a risk of inconsistent adjudications which would establish incompatible standards of conduct for Defendants, and, as a practical matter, the disposition of the Delaware Action would influence the disposition of any pending or future

identical cases brought by other members of the Settlement Class; and (vi) Defendants have allegedly acted or refused to act on grounds generally applicable to the Settlement Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Settlement Class as a whole.

4. The Court hereby certifies Delaware Plaintiffs as the Settlement Class representatives and Delaware Plaintiffs' counsel as Settlement Class counsel.

5. The Settlement is found to be fair, reasonable and adequate and in the best interests of the Settlement Class, and it is hereby approved. The Parties are hereby authorized and directed to comply with and to consummate the Settlement in accordance with the terms and provisions of the Stipulation, and the Register in Chancery is expressly directed to enter and docket this Order and Final Judgment in the Delaware Action.

6. This Order and Final Judgment shall not constitute any evidence or admission by any of the Parties herein that any acts of wrongdoing have been committed by any of the Parties to the Actions and should not be deemed to create any inference that there is any liability therefor.

7. The Delaware Action is hereby dismissed with prejudice in its entirety as to the Defendants and against Plaintiffs and all other members of the Settlement Class on the merits and, except as provided in the Stipulation, without costs.

8. Upon the Effective Date, Plaintiffs and members of the Settlement Class shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice, completely, individually, and collectively, any and all claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, decrees, duties,

suits, costs, debts, fees, expenses, interest, penalties, sanctions, matters and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, fixed or contingent, matured or unmatured, accrued or unaccrued, foreseen or unforeseen, apparent or unapparent, actual or potential, material or immaterial, which now exist, or heretofore existed, or may hereafter exist, whether for actual damages, exemplary damages, or interest (pre-judgment or post-judgment) on such damages, and whether for indemnity or contribution, whether individual, direct, class, derivative, representative, legal, equitable, or any other type or in any other capacity, including, but not limited to, any claims arising under federal, state, local or foreign statutory or common law or other law or rule, including the federal securities laws and any state statutory disclosure law, claims relating to alleged fraud, breach of any duty, negligence, or otherwise, and claims related to alleged unjust enrichment or self-dealing including, but not limited to, any claims related to compensation, that have been asserted in the Actions or that could have been asserted in the Actions or in any court, tribunal, arbitration or proceeding by or on behalf of the Plaintiffs or any member of the Settlement Class or on behalf of PSI, UHS, or Olympus against the Released Persons (defined below) that arise out of a Settlement Class member's status as a shareholder of PSI during the period between February 11, 2010 and the close of the Acquisition and which arise out of or relate in any manner to the allegations, acts, events, facts, matters, transactions, occurrences, statements, representations, misrepresentations or omissions or any other matter, thing or cause whatsoever, or any series thereof, embraced, involved or set forth in, or referred to or otherwise related, directly or indirectly, in any way to, the Actions, the Federal Derivative Action, or the subject matter of or allegations in the Actions or the Federal Derivative Action, and including without limitation any claims in any way, directly or indirectly, based on,

arising out of or related to: (i) the Acquisition or any aspect thereof, including but not limited to the vote on the Acquisition and any communications, negotiations or transactions relating in any way to the Acquisition; (ii) the disclosures made by or on behalf of PSI through and including consummation of the Acquisition; or (iii) the compensation received by any Defendant through and including the consummation of the Acquisition, including but not limited to, the increase in the number of shares of PSI common stock subject to grant under the Company's Equity Incentive Plan and any equity or RSU grants made by the Company to any Defendant, and without limiting the foregoing and solely for the avoidance of doubt any and all claims that were asserted or that could have been asserted in the Federal Derivative Action, excepting only: (i) any claims to enforce the terms and conditions of the Stipulation or the Settlement, and (ii) properly perfected appraisal rights, if any, PSI shareholders may have in connection with the Acquisition (collectively, the "Released Claims")[2] against Defendants (or any one of them) and their respective family members, affiliates, associates, parent entities or subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, partners, members, managing directors, employees, servants, agents, distributors, independent contractors, attorneys (including the Defendants' Counsel), advisors, consultants, insurers, accountants, trustees, financial or investment advisors, commercial bankers, persons who provided fairness opinions, investment bankers, representatives, general partners, limited partners, and partnerships; and the heirs, executors, personal representatives, estates, administrators, beneficiaries, predecessors, successors, and assigns of each of the foregoing, whether or not any such persons were named, served with process or appeared in the Actions or the Federal

---

[2] For the avoidance of doubt, the Released Claims do not extend to any claims asserted in the federal securities class action pending in the United States District Court for the Middle District of Tennessee styled *Garden City Employees' Retirement System v. Psychiatric Solutions, Inc. et al.*, Case No. 3:09-cv-00882 (filed September 21, 2009).

Derivative Action (the "Released Persons"). Upon the Effective Date, Plaintiffs and members of the Settlement Class shall be permanently and finally enjoined without the necessity of posting a bond from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution or instigation of any action or other proceeding asserting any of the Released Claims either directly, indirectly, representatively, derivatively or in any other capacity against any of the Released Persons.

9. Upon the Effective Date, each of the Defendants, on behalf of themselves and the other Released Persons that (directly or indirectly) are controlled by, control, or are under common control of the Defendants, shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally, and forever compromised, settled, released, discharged, extinguished, and dismissed with prejudice, completely, individually, and collectively, any and all claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, decrees, duties, suits, costs, debts, fees, expenses, interest, penalties, sanctions, matters and issues of any kind or nature whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, fixed or contingent, matured or unmatured, accrued or unaccrued, foreseen or unforeseen, apparent or unapparent, actual or potential, material or immaterial, which exist now, or heretofore existed, or may hereafter exist, whether for actual damages, exemplary damages, or interest (pre-judgment or post-judgment) on such damages, and whether for indemnity or contribution, that have been or could have been asserted in the Actions against Plaintiffs, Plaintiffs' Counsel, and members of the Settlement Class that are based upon or arise out of or relate in any way to the institution, prosecution, assertion, settlement, or resolution of the Actions or the Released Claims, excepting only any claims to enforce the terms and conditions of the

Settlement (the "Released Persons' Claims") against Plaintiffs, Plaintiffs' Counsel and members of the Settlement Class. Upon the Effective Date, the Released Persons shall be permanently and finally enjoined without the necessity of posting a bond from commencing, prosecuting, instigating, or in any way participating in the commencement, prosecution or instigation of any actions or other proceedings asserting any of the Released Persons' Claims either directly, indirectly, representatively, derivatively or in any other capacity against Plaintiffs, Plaintiffs' Counsel and members of the Settlement Class.

10. The releases contemplated by the Stipulation and by this Order and Final Judgment extend to claims that the party granting a release (a "Releasing Party") does not know or suspect to exist at the time of the release, which if known, might have affected the Releasing Party's decision to enter into the release. Upon the Effective Date, each Releasing Party shall be deemed to waive, and shall waive and relinquish to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of the United States or any state or territory of the United States or any other jurisdiction, or principle of common law, which governs or limits a person's release of unknown claims. Further, with respect to any and all of the Released Claims and Released Persons' Claims, each Releasing Party: (a) shall be deemed to waive, and shall waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

(b) shall be deemed to waive, and shall waive and relinquish, to the fullest extent permitted by law, any and all provisions, rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction, or principle of common law, which is similar,

comparable or equivalent to Section 1542 of the California Civil Code; and (c) acknowledges that such Releasing Party may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the release, but that it is the intention of each such Releasing Party to fully, finally, and forever compromise, settle, release, discharge, extinguish, and dismiss with prejudice, completely, individually, and collectively, any and all claims released pursuant to the terms of the Stipulation and this Order and Final Judgment, whether known or unknown, contingent or absolute, suspected or unsuspected, disclosed or undisclosed, liquidated or unliquidated, fixed or contingent, matured or unmatured, accrued or unaccrued, foreseen or unforeseen, apparent or unapparent, actual or potential, material or immaterial, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery or existence of such additional or different facts.

11. The provisions contained in the Stipulation and all negotiations, statements and proceedings in connection therewith are not, shall not be argued to be, and shall not be deemed to create a presumption, concession, or admission by any party of any fault, liability, or wrongdoing as to any fact or claim that has been or might be alleged in the Actions, or in any other action or proceeding, and shall not be offered or received in evidence or otherwise interpreted, construed, deemed, invoked, or used in any way by any party or person in any court, tribunal, arbitration or proceeding, provided, however, that the Stipulation and/or this Order and Final Judgment may be introduced in any proceeding, whether in this Court or otherwise, as may be necessary to argue that the Stipulation and/or this Order and Final Judgment has *res judicata*, collateral estoppel or other issue or claim preclusion effect or to otherwise consummate or enforce the Settlement and/or this Order and Final Judgment.

12. Plaintiffs' Counsel are hereby awarded attorneys' fees in the amount of $ _1,000,000.00_, inclusive of expenses, which amount the Court finds to be fair and reasonable. No counsel representing any plaintiff in any of the Actions shall make any further or additional application for fees and expenses to the Court or any other court.

13. Without affecting the finality of this Judgment in any way, the Court hereby retains continuing jurisdiction over the Delaware Action and the Parties for: (i) implementation of the Settlement; (ii) all other proceedings related to the implementation and enforcement of the terms of the Stipulation and/or the Settlement, including the resolution of any disputes that may arise with respect to the effectuation of any of the provisions of the Stipulation; and (iii) the entry of such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Stipulation, the Settlement and/or this Order and Final Judgment. The time to appeal from this Judgment shall commence upon notice of entry of the Judgment.

14. In the event that the Settlement set forth in the Stipulation is terminated in accordance with its terms, the Parties shall return to their respective litigation positions in the Actions and the Federal Derivative Action as of the time immediately prior to the date of the execution of the MOU, as though it were never executed or agreed to, and neither the MOU, nor the Stipulation, nor this Order and Final Judgment shall (i) be deemed to prejudice in any way the positions of the Parties with respect to the Actions or the Federal Derivative Action, (ii) constitute an admission of fact by any Party, (iii) entitle any Party to recover any costs or expenses incurred in connection with the implementation of the Stipulation or the Settlement, (iv) be admissible in evidence or be referred to for any purposes in the Actions, or in any court, tribunal, arbitration or proceeding, other than to enforce the terms of the Stipulation and this Order and Final Judgment.

15. In the event that any part or portion of this Order and Final Judgment is rendered or declared invalid by a court of competent jurisdiction, such invalidation of such part or portion of this Order and Final Judgment shall not invalidate the remaining portions hereof, and they shall remain in full force and effect; provided, however, that in the event paragraphs 7, 8, 9 and/or 10 of this Order and Final Judgment are declared invalid, then (a) the Settlement shall be terminated and the provisions of paragraph 14 of this Order and Final Judgment shall apply, except to the extent that the Parties agree in writing to preserve the Settlement to the extent not rendered or declared invalid, and (b) within five (5) business days after the entry of the applicable order, Plaintiffs' Counsel shall repay any amounts received as a result of the Fees and Expenses Application.

16. The effectiveness of the provisions of this Order and Final Judgment and the obligations of Plaintiffs and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal from this Order and Final Judgment that relates solely to Plaintiffs' Counsel's Fees and Expenses Application or any other counsel's application for an award of attorneys' fees and expenses.

_____
VICE- CHANCELLOR Glasscock